RECEIVED
NOV - 7 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MASTER ASSET SERVICES, INC. | CIVIL ACTION NO. 09-1404 |
| VERSUS | JUDGE DOHERTY |
| PETRO DISPOSAL, LLC | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Currently pending before the Court is an "Amended Motion for Summary Judgment" [Doc. 48], filed by defendant, Petro Disposal, LLC, whereby defendant seeks a judgment "dismissing Plaintiff's lawsuit with prejudice and awarding attorneys fees to Defendant." [Id. at 1]

According to the complaint, "[t]his matter involves the arbitrary breach of a contract in which Plaintiff was provided the right to procure a buyer for certain real property for the benefit of and on behalf of Defendant. . . ." [Doc. 1, ¶ 2] More specifically, "On or about May 6, 2005, Plaintiff . . . entered into a contract entitled 'Listing Agreement' with the Defendant . . . wherein Plaintiff was granted 'the right to procure a buyer' for the sale of certain real estate property, consisting particularly of the Gold Line Refinery and Assets located near the City of Mermentau, Parish of Jefferson Davis, Louisiana." [Id. at ¶ 5] Plaintiff further claims it introduced defendant to a prospective buyer, and approximately three months later, "Defendant executed the sale of the said refinery" to the same prospective buyer, without any notice to plaintiff, in violation of the listing agreement. [Id. at ¶¶ 9, 16-17]

Defendant argues summary judgment in its favor is warranted, because plaintiff "seeks the recovery of a commission for an activity concerning a real estate transaction, which is prohibited

1

under Louisiana law," because plaintiff is not a "real estate sales person or broker" licensed by the Louisiana Real Estate Commission. [Doc. 50, p.3] Plaintiff admits he is not a real estate agent or broker licensed in the State of Louisiana.[1] [Docs. 48-1, p.2, no. 4; 52-1, p.2, no. 4]

Chapter 17 of Title 37, "Louisiana Real Estate License Law," first defines certain regulated activities and relevant terms, including:

> (6) "Real estate" shall mean and include condominiums and leaseholds, as well as any other interest in land, with the exceptions of oil, gas and other minerals and whether the real estate is situated in this state or elsewhere.
>
> (7) "Real estate activity" means any activity relating to any portion of a real estate transaction performed for another by any person, partnership, limited liability company, association, or corporation, foreign or domestic, whether pursuant to a power of attorney or otherwise, who for a fee, commission, or other valuable consideration or with the intention, in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:
>
> (a) Sells, exchanges, purchases, manages, rents, or leases or negotiates the sale, exchange, purchase, rental, or leasing of real estate.
>
> (b) Offers or attempts or agrees to negotiate the sale, exchange, purchase, management, rental, or leasing of real estate.
>
> (c) Lists or offers or attempts or agrees to list for sale or lease any real estate or the improvement thereon.
>
> . . . .
>
> (e) Advertises or holds himself, itself, or themselves out as engaged in the business of selling, exchanging, purchasing, managing, renting, or leasing real estate.
>
> . . . .
>
> (20) "Real estate transaction" means the selling, offering for sale, buying, offering to buy, soliciting for prospective purchasers, managing, offering to manage, leasing,

---

[1] According to plaintiff, he is a "licensed auctioneer in the state of South Carolina, who operates a business in Georgia for the purpose of auctioning and brokering the sale of large businesses and/or business assets, principally in, but not limited to, the oil/ gas refinery industry." [Doc. 52, p.1]

> offering to lease, renting, or offering to rent any real estate or improvements thereon, or any business or other entity whose assets include real estate or leases of real estate.

La. R.S. 37:1431.

Louisiana Revised Statute 37:1436 ("Licensing and registration required") provides in pertinent part:

> B. It shall be unlawful for any person or entity, directly or indirectly, to engage in or conduct, or to advertise or hold himself out as engaging in or conducting the business, or acting in the capacity, of a real estate broker or real estate salesperson within the state without first obtaining a license as such broker or salesperson, and being classed as an active licensee. . . .

Another provision of the statute mandates that "[n]o person engaged in real estate activity without a currently valid license shall have the right to receive any compensation for services so rendered." La. R.S. 37:1459(D).

Finally, another section of the statute prohibits courts from enforcing contracts for real estate commissions, brokerage fees, or any other sort of similar compensation, in favor of unlicensed persons. Specifically, Louisiana Revised Statute 37:1445 ("Unlicensed persons cannot recover brokerage charges") provides:

> No action or suit shall be instituted, nor recovery be had, in any court of this state by any person for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provision of this Chapter to other licensed brokers or licensed salespersons unless such person was duly licensed under this Chapter as a broker or salesperson prior to the time of offering to perform any such act or service or procuring any promise to contract for the payment of compensation for any such contemplated act of service.[2]

---

[2] Stated otherwise, "It is very clear from these provisions that persons conducting transactions involving immovable property, unless they are exempted from these provisions, must have a real estate license before taking any action in furtherance of such transactions." *Torbert Land Co., L.L.C. v. Montgomery*, 42 So.3d 1132, 1136 (La. 1st Cir. 2010). Even where the owner of immovable property agrees to pay compensation to a non-licensed person for the sale of that property, the seller "may not sue to enforce such agreement," as the seller has no right of action pursuant to Louisiana law unless he owns the property or has a Louisiana real estate license. *Id.*

3

La. R.S. 37:1445.

Although plaintiff concedes he is not a Louisiana licensed real estate broker or salesperson, he argues the "licensing requirements do not preclude recovery in this matter" for the following reasons: (1) the sale contemplated by the parties was actually "the sale of a going concern" rather than a real estate transaction; (2) "Plaintiff was engaged to procure a purchaser for only the refinery as a going concern and/or the refinery equipment- [defendant] was going to take care of selling the land," and therefore no real estate broker was required[3]; and (3) due to defendant's conducting the sale "in a secretive manner," plaintiff was unable to "associat[e] with a Louisiana licensed real estate broker for a referral fee." [Doc. 52, pp. 3-4]

With regard to plaintiff's first argument, plaintiff asserts as follows: "During negotiations over the services to be performed by Plaintiff, Plaintiff unequivocally advised [defendant] that it would be auctioning the business as a "Going Concern" or as liquidated movable parts and equipment, which did not include the land"; defendant insisted that everything (including the land) be sold, that plaintiff agreed to sell the refinery as well as the land "with the understanding that a realtor licensed in Louisiana would close the land purchase if included" - however, defendant "advised there was no need for a licensed realtor to be involved since he could personally sell his own property"; "the land had no value because it was contaminated with diesel and petroleum products"; "[u]nder these facts, Plaintiff asserts that the sale of the land was merely incidental to the true sale- the sale of a refinery as a going concern and/or as assets"; and finally, "because there was no consideration ever contemplated for the land- Louisiana's real estate licensure laws do not apply." [Id. at 4-5, 6]

---

[3] The licensing law does not apply to "any individual, corporation, partnership, trust, limited liability company, joint venture, or other entity which sells, exchanges, leases, or manages its own property. . . ." La. R.S. 37:1438(5).

4

It is clear the agreement entered into by the parties involves the sale of "real estate" as defined by La. R.S. 37:1431(6).[4] The stated purpose of the "Listing Agreement" is that "Owner desires to sell certain *real property*, Gold Line Refinery and Assets," and the "Owner is to fine to Broker the right to procure a buyer for the above-described property at the price established during the term of the Listing Agreement." [Doc. 48-5, p.1 (emphasis added)] The "duties of broker" include: "[t]o find a buyer who is willing to purchase the above described property 'as is' including the land, refinery, and assets exclusive of any mineral rights." [Id.] Selling or offering to sell this "real estate" constitutes a "real estate transaction," as defined by La. R.S. 37:1431(20).[5] Accordingly, the Court finds the contract entered into by the parties was a listing agreement for "real estate" rather than a "going concern."[6]

Plaintiff next argues no real estate broker was required, because "Plaintiff was engaged to procure a purchaser for only the refinery as a going concern and/or the refinery equipment-[defendant] was going to take care of selling the land." [Doc. 52, pp. 3-4] Again, this statement is in direct contradiction with the "purpose" of the "Listing Agreement," namely, "to sell certain real property." [Doc. 48-5, p.1]

Plaintiff's final argument is that due to defendant's "fraud and deceipt," plaintiff was

---

[4] Again, "'Real estate' shall mean and include condominiums and leaseholds, as well as any other interest in land, with the exceptions of oil, gas and other minerals and whether the real estate is situated in this state or elsewhere." La. R.S. 37:1431(6).

[5] Again, "'Real estate transaction' means the selling, offering for sale, . . . soliciting for prospective purchasers, . . . any real estate or improvements thereon, or any business or other entity whose assets include real estate . . . ." La. R.S. 37:1431(20). Buildings and other constructions permanently attached to the ground constitute "improvements" under Louisiana law. La. Civ. Code art. 493.

[6] In fact, nothing in the contract indicates the parties ever contemplated the sale of a "going concern."

precluded "from associating with a Louisiana licensed real estate broker for a referral fee," pursuant to La. R.S. 37:1447 ("Referral fees; interference with brokerage relationships"). [Doc. 52, p.7] However, while La. R.S. 37:1447 does allow for referral fees in certain limited circumstances, it also provides, "The solicitation or request of a referral fee or similar payment in accordance with this Subsection shall not create a legal right to be paid such fee or payment." La. R.S. 37:1447(A)(2). In other words, a right of action does not exist for solicitors of referral fees. Furthermore, as noted in *Trentman Co. v. Brown*, 176 La. 854, (La. 1933), a case which held plaintiff had no right to recover a real estate commission where he had failed to comply with Louisiana's licensing laws: "'No principle of law is better settled than that a party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction.'" *Id.* at 860 (quoting *Wise v. Radis*, 74 Cal. App. 765, 242 p. 90 (Cal. App. 2 Dist. 1925))

With regard to plaintiff's request that this Court consider parol evidence in this matter, the request is denied. The Court notes the "Listing Agreement" states: "This agreement shall constitute the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of this agreement shall not be binding upon either party except to the extent incorporated in this agreement." [Doc. 48-5, p. 3] The contract additionally states, "Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if placed in writing and signed by each party or an authorized representative of each party." [Id.] The "Listing Agreement" at issue is an "authentic act." La. Civ. Code art. 1833.[7]

---

[7] La. Civ. Code art. 1833 provides in pertinent part: "An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses and signed by each party who executed it, by each witness, and by each notary public before whom it was

"An authentic act constitutes full proof of the agreement it contains. . . ." La. Civ. Code art. 1835. "Consequently, parole evidence is rarely admissible to contradict or destroy the authentic act." *Succession of Robinson*, 654 So.2d 682, 685 (La. 1995). Moreover:

> When a contract is subject to interpretation from the four corners of the instrument, without the necessity of extrinsic evidence, that interpretation is a matter of law. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties' intent.

*Corbello v. Iowa Production*, 850 So.2d 686, 693 (La. 2003)(citations omitted); *see also* La. Civ. Code art. 2046.[8] In light of the foregoing, the Court declines to consider parol evidence in this matter.

Defendant's request for attorneys fees is denied, as he has provided no basis for same.[9]

As all claims have now been dismissed, the parties are to submit a final judgment, approved as to form, within thirty (30) days of receipt of this Ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 7 day of November, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

executed."

[8] *See also Campbell v. Melton*, 817 So.2d 69, 75 (La. 2002)("Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless the written expression of the common intention of the parties is ambiguous. A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed.")(citations omitted).

[9] The contract contains no provision for attorneys fees. *See e.g, Sher v. Lafayette Ins. Co.*, 998 So.2d 186, 201 ("Louisiana courts have long held that attorney's fees are not allowed except where authorized by statute or contract.")